PROSKAUER ROSE LLP
Kathleen M. McKenna (KM-4258)
Deidre A. Grossman (DG-2677)
1585 Broadway
New York, New York 10036
(212) 969-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                                :

RICHARD ELLO,                                 :
                                                :

                          Plaintiff,       :       Case No. 05 CV 9625 (KMK)
                                              :

               v.                            :
                                              :       (ECF Case)

ISHRI SINGH, et al.,                     :

                         Defendants.    :

------------------------------------------------------------------------x

# FUND DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR DISQUALIFICATION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ...................................................................................................3

ARGUMENT.......................................................................................................................4

I       THE LEGAL STANDARD FOR DISQUALIFICATION...........................................4

II.     PLAINTIFF HAS FAILED TO ESTABLISH THAT
        DISQUALIFICATION IS WARRANTED UNDER THE
        ADVOCATE-WITNESS RULE .........................................................................5

III.    PLAINTIFF HAS FAILED TO ESTABLISH THAT
        DISQUALIFICATION IS WARRANTED UNDER THE RULE
        PRECLUDING REPRESENTATION ADVERSE TO A
        FORMER CLIENT .............................................................................................9

        A.      Proskauer's Role As Counsel To The Client Funds And The Union
                Did Not Give Rise To An Attorney-Client Relationship With Plaintiff...................10

        B.      The Issues In This Action Are Not "Substantially Related" To
                Any Advice Plaintiff Would Have Received As A Representative
                Of The Client Funds Or The Union ...........................................................12

        C.      Any Information Plaintiff Shared With Proskauer As A Trustee
                Of MTDC Funds Cannot Constitute "Confidences" For The
                Purposes Of Disqualification .....................................................................13

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Allegaert v. Perot*,
  565 F.2d 246 (2d Cir. 1977)...............................................................4, 13, 15, 16

*Am. Special Risk Ins., Co. v. Delta Am. Re Ins. Co.*,
  634 F. Supp. 112 (S.D.N.Y. 1986) ...................................................................15

*Bloom v. St. Paul Travelers Cos.*,
  No. 2005-02336, 2005 WL 3485895 (2d Dep't Dec. 19, 2005) ........................12

*British Fish Dev., Inc. v. Wheeler's Rest. PLC*,
  No. 89 Civ. 4616, 1990 WL. 37828 (S.D.N.Y Mar. 28, 1990) .........................12

*Cohen v. ACORN Int'l, Ltd.*,
  921 F. Supp. 1062 (S.D.N.Y. 1995).................................................................15

*Evans v. Artek Systems Corp.*,
  715 F.2d 788 (2d Cir. 1983)..............................................................................9

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998).........................................................................................8

*Forrest v. PAR Pharm., Inc.*,
  46 F. Supp. 2d 244 (S.D.N.Y. 1999), *aff'd*, 242 F.3d 365 (2d Cir. 2001) ..................5, 6, 7

*Gov't of India v. Cook Indus., Inc.*,
  569 F.2d 737 (2d Cir. 1978)..........................................................................4, 12

*Hirsch v. Columbia Univ.*,
  293 F. Supp. 2d 372 (S.D.N.Y. 2003).............................................................10

*In re Worldcom*,
  263 F. Supp. 2d 745 (S.D.N.Y. 2003).............................................................15

*Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*,
  No. 01 Civ. 6600, 2005 WL 3370542 (S.D.N.Y. Dec. 12, 2005).......................7

*Junior Gallery, Ltd. v. Foreign Res. Corp.*,
  No. 94 Civ. 2917, 1994 WL 669556 (S.D.N.Y. Nov. 30, 1994) .......................12

*Kamara v. United States*,
  No. 04 Civ. 0626, 2005 WL 2298176 (S.D.N.Y. Sept. 20, 2005).......................1

*Kempner v. Oppenheimer & Co.,*
    662 F. Supp. 1271 (S.D.N.Y. 1987)................................................................15

*Kinlay v. Henley,*
    No. 602886/04, 2005 N.Y. Misc. LEXIS 844 (N.Y. Sup. Ct. Mar. 21, 2005) .................14

*Mason Tenders District Council Pension Fund v. Messera,*
    4 F. Supp. 2d 293 (S.D.N.Y. 1998) ........................................................................11

*Mitchell v. Metro. Life Ins. Co.,*
    No. 01 Civ. 2112, 2002 WL 441194 (S.D.N.Y. Mar. 21, 2002) .........................................9

*Paramount Commc'ns, Inc. v. Donaghy,*
    858 F. Supp. 391 (S.D.N.Y. 1994) ........................................................................4, 6

*Parke-Hayden, Inc. v. Loews Theatre Mgmt. Corp.,*
    794 F. Supp. 525 (S.D.N.Y. 1992) ......................................................................5, 6, 7

*Rice v. Baron,*
    456 F. Supp. 1361 (S.D.N.Y. 1978).........................................................................6

*Rocchigiani v. World Boxing Counsel,*
    82 F. Supp. 2d 182 (S.D.N.Y 2000)........................................................................15

*Senese v. Chicago Area I.B. of T. Pension Fund,*
    No. 97 C 0382, 1999 WL 90633 (N.D. Ill. Feb. 9, 1999).........................................10, 11

*Talvy v. Am. Red Cross,*
    205 A.D.2d 143, 618 N.Y.S.2d 25 (1st Dep't 1994)...............................7,  13, 14, 15

*Toussaint v. James,*
    No. 01 Civ. 10048, 2003 WL 21738974 (S.D.N.Y. July 25, 2003) .................................11

*U.S. Indus., Inc. v. Goldman,*
    421 F. Supp. 7 (S.D.N.Y. 1976).............................................................................10

*Ullrich v. Hearst Corp.,*
    809 F. Supp. 229 (S.D.N.Y. 1992),
    *appeal denied,* Nos. 92 Civ. 1320, 3671, 5396, 1992 U.S. Dist. LEXIS 19752
    (S.D.N.Y Dec. 22, 1992)..................................................................................9, 10

*United States v. Rosato,*
    No. 88-66E, 1989 WL 153790 (W.D.N.Y. Dec. 7, 1989) .............................................11

*Universal Film Exchs., Inc. v. Walter Reade, Inc.,*
    37 F.R.D. 4 (S.D.N.Y. 1965) ..................................................................................7

*Wayland v. Shore Lobster & Shrimp Corp.*,
    537 F. Supp. 1220 (S.D.N.Y. 1982)..................................................................................10

## STATUTES AND OTHER AUTHORITIES

N.Y. Comp. Codes R. & Regs. tit. 22. § 1200.27(a) ......................................................10

N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.21(d) ......................................................5

## PRELIMINARY STATEMENT

Although this litigation is still in its early stages, it has already become apparent that Plaintiff Richard Ello ("Plaintiff") intends to employ an "allege now, research later" approach to litigation, freely advancing claims without legal merit, unconcerned about the resources the Fund Defendants[1] and the Court are required to expend in response. Plaintiff's application for disqualification of Proskauer Rose LLP ("Proskauer") as counsel for the Fund Defendants follows along these lines. Leaving aside the irregular and inadequate form of Plaintiff's submissions on a subject as serious as disqualification, Plaintiff's position finds no support in the well-established law in this Circuit – none of which he cites.[2]

Having apparently realized, following the January 5, 2006 pre-motion conference with this Court, that he would be unable to gather the requisite factual or legal support to argue disqualification under the "advocate-witness" rule, Plaintiff appears to have tacked on a new theory for seeking to deprive the Fund Defendants of their chosen counsel. The theory – although far from clear – seems to be that, while working with Proskauer in his capacity as a trustee and union officer, Plaintiff had confidential communications with the firm which now precludes the firm from "choosing sides" in favor of representing the Fund Defendants. (Affirmation of Ruth Pollack ("Pollack Aff.") at ¶ 7). In this regard, Plaintiff offers up a two-page, laundry list of "past interactions between Proskauer Rose LLP and Richard Ello," which

---

[1] The Fund Defendants are Ishry Singh, Laborers-Employers Cooperation and Education Trust Fund ("LECET"), Mason Tenders' District Council Trust Funds ("MTDC Funds"), Raymond Pocino, as a Trustee of the MTDC Funds, and John Virga, MTDC Funds' Director.

[2] Under Local Civil Rule 7.1 of the Southern District of New York, Plaintiff was required to serve a memorandum of law in support of his application for disqualification, citing to relevant authorities in support of his position. Plaintiff here filed only an affirmation by Plaintiff and his counsel. However, an affirmation alone will not satisfy the requirements of Rule 7.1. *Kamara v. United States*, No. 04 Civ. 0626, 2005 WL 2298176 (S.D.N.Y. Sept. 20, 2005). Failure to comply with Local Rule 7.1 is, in itself, a basis to deny Plaintiff's motion for disqualification. *Id.* at *1.

includes everything from trustee meetings to holiday parties, with dinners receiving special emphasis through the use of bold type (for reasons still unclear). (Pollack Aff. at ¶ 8). However, nowhere in his application does Plaintiff cite to a single case sustaining his new theory for disqualification, his only legal support being a reference to D.R. 5-105 (simultaneous representation), which must be mistaken since Plaintiff is clearly not a current client of Proskauer's. Had Plaintiff undertaken the necessary research to make his papers more informative to both the Fund Defendants and the Court, he would have realized that he does not meet the grounds for disqualification under either of the two theories he invokes.

Taking his argument under the "advocate-witness" rule first, Plaintiff's application should be denied because he has not met his heavy burden to demonstrate that the testimony of a Proskauer lawyer will be both (1) necessary, and (2) prejudicial to the Fund Defendants. Although Plaintiff peppered Proskauer's name throughout his Complaint – for reasons that could only have had to do with his plans for disqualification – he has not taken the next, essential step of actually demonstrating that Proskauer lawyers will be necessary witnesses to these proceedings and that their testimony will be prejudicial to their clients. Rather, he offers conclusory statements that do not come close to meeting the heavy burden for disqualification, particularly where a closer analysis of Plaintiff's own allegations reveals that any testimony Proskauer could provide in this lawsuit would be at best cumulative and, in any event, consistent with the Fund Defendants' position. Plaintiff's application for disqualification based on the "advocate-witness" rule must therefore be denied.

Plaintiff's argument under the "former client" rule fairs no better. First, there was no attorney-client relationship between Plaintiff and Proskauer. Second, even if any of the "interactions" between the firm and Plaintiff in his representative capacity could properly be

viewed as a substitute for an attorney-client relationship, they arose in the context of advice given to him as a trustee and are therefore, not "substantially related" to Plaintiff's current lawsuit for retaliatory discharge.  Third, none of the information Plaintiff could have shared with Proskauer as part of such alleged representation could, in any event, constitute a "confidence," since Plaintiff knew that Proskauer was counsel to the MTDC Funds and thus, as a matter of both fact and law, could not have expected that any information conveyed to Proskauer would be kept confidential from the Fund Defendants.  In sum, the disclosure of information to the Fund Defendants cannot form the basis for disqualification.

Plaintiff's application is thereby exposed for what it truly is: a tactical effort to deprive the Fund Defendants of their chosen counsel and postpone consideration of Plaintiff's claims on their merits.  His application must be denied.

## STATEMENT OF FACTS

As discussed further below, it is well-established in this Circuit that the burden is on Plaintiff to demonstrate that disqualification is warranted.  Plaintiff has failed to do so, resting his case entirely on vague allegations of "interactions" between him and Proskauer and Proskauer's alleged involvement in the events leading to Plaintiff's termination.

In order to dispel any doubt over whether Proskauer's continued representation of the Fund Defendants is appropriate, the Declaration of Proskauer partner Rory J. Albert, Esq. ("Albert Decl.") is appended to describe in more detail the nature of Proskauer's representation of:  (i) the several employee benefit funds[3] for which Plaintiff was a trustee (the "Client Funds");

---

[3] These include:  (i) the MTDC Funds; (ii) the Demolition Workers Union Local 95 Trust Funds; (iii) Recycling and General Industrial Union Local 108 Pension and Welfare Fund; and (iv) Plasterers Helpers' Local 30 Trust Funds.

and (ii) the Mason Tenders District Council of Greater New York (the "Union"), for isolated

matters. This declaration confirms that none of the matters on which Proskauer could have

communicated with Plaintiff in his representative capacity are "substantially related" to his

current lawsuit for retaliatory discharge following a complaint of sexual harassment.

## ARGUMENT

### I.

## THE LEGAL STANDARD FOR DISQUALIFICATION

"Motions to disqualify opposing counsel . . . are viewed with disfavor." *Paramount*

*Commc'ns, Inc. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994). The principle reason for

this is that disqualification of counsel impinges on parties' rights to employ their attorney of

choice. *Id.* Due to the importance of such rights, courts in this Circuit have imposed "a heavy

burden" on the movant to demonstrate that disqualification is appropriate. *See, e.g., Gov't of*

*India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978) ("there is a particularly trenchant

reason for requiring a high standard of proof on the part of one who seeks to disqualify his

former counsel, for in disqualification matters we must be solicitous of a client's right freely to

choose his counsel."). Moreover, because motions for disqualification are often interposed

merely for tactical reasons, courts have subjected such motions to strict scrutiny and granted

them only in narrowly tailored circumstances. *See, e.g., Allegaert v. Perot*, 565 F.2d 246, 251

(2d Cir. 1977) ("disqualification motions have become 'common tools of the litigation process,

being used . . . for purely strategic purposes'") (quotation omitted); *Paramount*, 858 F. Supp. at

394 ("Because of the 'strong potential for abuse' when a lawyer invokes the need to call

---

(Albert Decl. at ¶¶ 4, 5, 8, 10, 13 ).  Because Proskauer did not begin representing defendant LECET until after
Plaintiff's resignation, it could not have advised Plaintiff in his capacity as LECET Director. (Albert Decl. at 13).

opposing counsel as a witness and then acts to disqualify him as counsel[,]" disqualification motions premised on the "advocate-witness rule" are subject to "strict scrutiny.").

As demonstrated below, Plaintiff has failed to meet this high burden of proof, as a matter of both fact and law. Moreover, it is patently clear that Plaintiff has interposed his application, not only to prevent the Fund Defendants from continuing to use Proskauer as their litigation counsel and to force them to retain new counsel with no background in the case, but also for the purpose of delaying consideration of his claims on their merits. This Court should deny Plaintiff's unfounded tactical motion.

## II.

### PLAINTIFF HAS FAILED TO ESTABLISH THAT DISQUALIFICATION IS WARRANTED UNDER THE ADVOCATE-WITNESS RULE

Plaintiff has failed to satisfy the standard he tenders for disqualification under Disciplinary Rule 5-102(d), commonly referred to as the "advocate-witness rule." D.R. 5-102(d) provides that:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his or her firm may be called as a witness on a significant issue other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer and the firm must withdraw acting as an advocate before the tribunal.

N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.21(d); *Forrest v. PAR Pharm., Inc.*, 46 F. Supp. 2d 244, 248 (S.D.N.Y. 1999), *aff'd*, 242 F.3d 365 (2d Cir. 2001).

In order to succeed on a motion for disqualification under the advocate-witness rule, courts have required the moving party to demonstrate (1) the necessity of the testimony, as well

as (2) a substantial likelihood of prejudice to the defendant. *Parke-Hayden, Inc. v. Loews Theatre Mgmt. Corp.*, 794 F. Supp. 525, 527 (S.D.N.Y. 1992). Necessity is determined by consideration of factors such as "the significance of the matters, the weight of the testimony, and the availability of other evidence[.]" *Paramount*, 858 F. Supp. at 394. "Testimony may be relevant and even highly useful but still not strictly necessary." *Id.* (citations omitted) Prejudice, on the other hand, requires that the testimony be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Parke-Hayden*, 794 F. Supp. at 527(*quoting Rice v. Baron*, 456 F. Supp. 1361, 1371 (S.D.N.Y. 1978)); *Paramount*, 858 F. Supp. at 395. Moreover, in proving prejudice, the moving party "bears the burden of demonstrating how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial." *Id.* "These principles mean that the party seeking disqualification must meet a high standard of proof." *Forrest*, 46 F. Supp. 2d at 247.

It is easy to conclude that Plaintiff has not met his burden in this case because he has not explained, let alone established, why he believes disqualification is warranted under D.R. 5-102(d). The Fund Defendants assume, from Plaintiff's arguments at the January 5, 2006 conference before this Court, that Plaintiff purports to rest his case on paragraph 87 of the Amended Complaint, which states:

> Upon information and belief, Kathleen McKenna, Esq. of Proskauer Rose called the police department handling the case and stated in pertinent part "I want to get him and need first crack at him," meaning plaintiff, Richard Ello. Upon information and belief, this was additional evidence that Rossein was merely an agent of Proskauer and not impartial or fair to plaintiff.

6

(Amended Compl. at 87). This statement, however, adds nothing to Plaintiff's case. Leaving aside that Plaintiff has submitted no competent evidence that Ms. McKenna made the statement alleged (despite Plaintiff's suggestion at the January 5 conference that he had information to "share" with Defendants to bolster his disqualification motion),[4] and that the allegations are inadmissible "double" hearsay, Plaintiff has not explained why counsel for the Fund Defendants' alleged interest in speaking to the police is "additional evidence" that the investigation performed by Mr. Rossein was not impartial.

If Plaintiff needs discovery to ascertain whether Mr. Rossein was impartial, he is free to depose Mr. Rossein about his retention and the investigation. After all, it is Mr. Rossein's state of mind that is relevant to whether or not he conducted a fair investigation, not Ms. McKenna's. Ms. McKenna's testimony regarding any investigation would be, at best, cumulative, but more likely highly irrelevant and, in any event, an insufficient basis for disqualification. *See, e.g.,* *Forrest*, 46 F. Supp. 2d at 248 (where client could testify to advice given by counsel, counsel's testimony was cumulative and did not meet the requirements to establish necessity); *Parke-Hayden*, 794 F. Supp. at 527 (stating that testimony that is cumulative is *per se* not necessary); *Talvy v. Am. Red Cross*, 205 A.D.2d 143, 618 N.Y.S.2d 25 (1st Dep't 1994).

---

[4] In support of his application, Plaintiff has submitted his attorney's "affirmation," which intermingles alleged facts with comment, inference and argument and which, but for its failure to include a single legal citation, purports to be a substitute for a memorandum of law (*but see supra* at n.1). The affirmation, however, is inadequate as a means of introducing facts in support of Plaintiff's application because any facts appearing therein pre-date counsel's involvement and thus could not be within her personal knowledge. *See, e.g., Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, No. 01 Civ. 6600, 2005 WL 3370542 (S.D.N.Y. Dec. 12, 2005) (striking attorney affidavit that mixed facts with argument and swore to facts that pre-dated attorney's involvement). Plaintiff's own affidavit, wherein he states that he has read his attorney's affirmation and "adopt[s] the statements therein as true and correct to the best of [his] knowledge," is of no assistance since it is impossible to determine what "statements" he is referring to. Courts in this Circuit have not hesitated to strike submissions which suffered from the same irregularity as Plaintiff's here. *See, e.g., Universal Film Exchs., Inc. v. Walter Reade, Inc.*, 37 F.R.D. 4, 6 (S.D.N.Y. 1965) (striking plaintiff's affidavit which "confirm[ed] the facts and events" referred to in an attorney affidavit, reasoning that it was inadequate to introduce facts in support of plaintiff's motion).

The analysis applies equally to paragraphs 104 to 112 of the Amended Complaint, where Plaintiff suggests that defendant Pocino breached his fiduciary duties owed to Plaintiff by not speaking to Plaintiff about Mr. Singh's allegations "claiming that Proskauer Rose had directed him not to[.]" (Amended Compl. at ¶ 107). Even assuming that Plaintiff's claim for breach of fiduciary duty against Mr. Pocino could survive a motion to dismiss,[5] and further assuming that the advice rendered to Mr. Pocino is deemed relevant to Plaintiff's claims, thus waiving privilege, in such an unlikely event, the relevant person to depose on the issue would be Mr. Pocino, not anyone at Proskauer.

Finally, even if this Court were to assume that Plaintiff's unsubstantiated allegations in respect of Ms. McKenna were in fact true, disqualification would still be unwarranted because none of the statements or advice attributed to Ms. McKenna would be prejudicial to the Fund Defendants. If Ms. McKenna did in fact suggest that she wanted a "first crack" at Plaintiff, this statement could easily be construed as being consistent with the MTDC Funds' obligation to promptly investigate allegations of sexual harassment by an employee under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Similarly, if Mr. Pocino had been advised to not disclose the details of Mr. Singh's complaint to Plaintiff, this would have been consistent with the principle that, in an investigation of claims of harassment, it is imprudent to give the accused advance notice of the allegations against him. Notably, had Ms. McKenna made the statements alleged, those comments would have been consistent with, and not prejudicial to, the Fund Defendants' obligations.

---

[5] For the reasons set out in their December 21, 2005 letter to the Court, it is the Fund Defendants' position that Plaintiff's claims against Mr. Pocino are devoid of legal merit and should be dismissed outright.

Because Plaintiff has not satisfied his heavy burden of demonstrating that testimony by a Proskauer lawyer would be both necessary and prejudicial to the Fund Defendants' case, his application for disqualification under the advocate-witness rule must be denied.

## III.

## PLAINTIFF HAS FAILED TO ESTABLISH THAT DISQUALIFICATION IS WARRANTED UNDER THE RULE PRECLUDING REPRESENTATION ADVERSE TO A FORMER CLIENT

Plaintiff's arguments for seeking to disqualify Proskauer on the basis of the alleged "confidential, unofficial, and personal information" he claims to have shared with Proskauer while "working extensively" with the firm in his capacity as trustee and/or Union officer fair no better than those under the advocate-witness rule. (Pollack Aff. at ¶¶ 2, 8).

In *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983), the Court of Appeals for the Second Circuit devised a three-prong test which a movant must satisfy in order for disqualification to be appropriate. Under *Evans*, "an attorney may be disqualified from representing a client in a particular case if: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *See also Mitchell v. Metro. Life Ins. Co.*, No. 01 Civ. 2112, 2002 WL 441194 (S.D.N.Y. Mar. 21, 2002); *Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992), *appeal denied,* Nos. 92 Civ. 1320, 3671,

5396, 1992 U.S. Dist. LEXIS 19752 (S.D.N.Y Dec. 22 1992); DR 5-108(A)[6]; 22 Comp. Codes R. & Regs. tit. 22 § 1200.27(a).  Plaintiff has not established any of these three requirements.

## A.    Proskauer's Role As Counsel To The Client Funds And The Union Did Not Give Rise To An Attorney-Client Relationship With Plaintiff

First, Plaintiff has not established that he had an attorney-client relationship with Proskauer.  The fact that Proskauer communicated its advice to the Client Funds and to the Union through Plaintiff, as one of these entities' representatives, does not give rise to an attorney-client relationship with Plaintiff.  It is well-settled that a law firm representing an entity does not *ipso facto* represent its constituents.  *Hirsch v. Columbia Univ.*, 293 F. Supp. 2d 372, 376-77 (S.D.N.Y. 2003) (denying motion for disqualification, reasoning that, although opposing counsel represented company of which defendant was CEO, it did not represent the defendant); *U.S. Indus., Inc. v. Goldman*, 421 F. Supp. 7, 11 (S.D.N.Y. 1976) (defendant's position as director and officer of plaintiff corporation did not create attorney-client relationship between him and lawyers for corporation; no services were performed for director personally and he never paid fees); *see also* N.Y. Jud. Law App., Code of Professional Responsibility, EC 5-18 ("A lawyer employed or retained by a corporation or similar entity owes allegiance to the entity and not to a shareholder, director, officer, employee, representative, or other person connected with the entity.")[7]

---

[6] Disciplinary Rule 5-108 of the Code of Professional Responsibility provides that without consent of a former client: "a lawyer who has represented a client in a matter shall not . . . [t]hereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client."

[7] To the extent Plaintiff is suggesting that Proskauer's representation of the MTDC Funds formed an attorney-client relationship with him as an individual fund participant, this argument is equally untenable.  *See, e.g., Senese v. Chicago Area I.B. of T. Pension Fund*, No. 97 C 0382, 1999 WL 90633 (N.D. Ill. Feb. 9, 1999) (rejecting argument that lawyer could be deemed to have attorney-client relationship with individual plan participants by virtue of being fund counsel); *Wayland v. Shore Lobster & Shrimp Corp.*, 537 F. Supp. 1220, 1223 (S.D.N.Y. 1982) (denying motion for disqualification brought by individual shareholders for absence of attorney-client relationship; counsel to

Several courts in this Circuit have applied these principles in the employee benefit plan and union context to hold that no attorney-client relationship arises between a trustee and fund counsel, or a union official and counsel to the union, simply by virtue of the advice given to them in their representative capacities. *See, e.g., Toussaint v. James,* No. 01 Civ. 10048, 2003 WL 21738974 (S.D.N.Y. July 25, 2003) (finding no attorney-client relationship between individual trustees of pension plan and plan counsel, noting that "[c]ounsel for pension plans do not, *ipso facto*, become counsel for trustees, as a pension plan is considered a distinct legal entity and may sue or be sued in its own capacity[.]"); *United States v. Rosato,* No. 88-66E, 1989 WL 153790 (W.D.N.Y. Dec. 7, 1989) (in context of disqualification proceedings, counsel for employee benefit funds held not to have attorney-client relationship with trustee on basis of regular advice given about fund matters); *see also Senese,* 1999 WL 90633, at *3 (counsel's advice to employee benefit fund and union did not create attorney-client relationship with fund trustee or union official).  Indeed, the fact that a trustee and a fund are considered separate entities for purposes of determining attorney-client relationships should not be news to Plaintiff, since he should be fully familiar with Judge Sweet's adverse decision in *Mason Tenders District Council Pension Fund v. Messera*, 4 F. Supp. 2d 293 (S.D.N.Y. 1998), declining to find an attorney-client relationship between lawyers retained to advise individual trustees and the MTDC Pension Fund.

Because an attorney-client relationship is the *sine qua non* of disqualification under the "former client" rule, and because none existed here, Plaintiff's application should be denied outright.

---

corporation may have "represented the shareholders as a group, as an alter-ego of the corporation[,]" but not individual shareholders).

**B.    The Issues In This Action Are Not "Substantially Related" To Any Advice Plaintiff Would Have Received As A Representative Of The Client Funds Or The Union**

Even if, for purposes of this motion, this Court were to presume that an attorney-client relationship between Proskauer and Plaintiff arose by virtue of the firm's communications with Plaintiff in his representative capacities, Plaintiff's application should still be denied because there is no relationship – much less a "substantial relationship" – between the subject matter of this action and the advice Proskauer provided to trustees or union officials.

As the Second Circuit explained in *Government of India*, the relevant considerations on a motion to disqualify "have resulted in honing the 'substantial relationship' test in this Circuit in practical application to granting disqualification only upon a showing that the relationship between issues in the prior and present cases is 'patently clear.' Put more specifically, disqualification has been granted or approved recently only when the issues involved have been 'identical' or 'essentially the same.'" 569 F.2d at 739, 739-40 (citations omitted). *British Fish Dev., Inc. v. Wheeler's Rest. PLC,* No. 89 Civ. 4616, 1990 WL 37828, at *3 (S.D.N.Y Mar. 28, 1990). Further, "[d]isqualification is not mandated merely because some matters have some factual connection to the allegations of the present complaint." *Junior Gallery, Ltd. v. Foreign Res. Corp.,* No. 94 Civ. 2917, 1994 WL 669556, at *3 (S.D.N.Y. Nov. 30, 1994) (denying motion even though firm had previously advised movant regarding copyright issues and the instant case involved related copyright issues); *Bloom v. St. Paul Travelers Cos.,* No. 2005-02336, 2005 WL 3485895, at *2 (2d Dep't Dec. 19, 2005) (denying the motion to disqualify because there was "no evidence that the legal issue at the heart of the present action [was] 'essentially the same as' any of the various legal issues" handled previously by legal counsel or that the current representation was substantially related in any way to the past representation).

As confirmed by the description of the categories of advice set forth in the Declaration of Rory J. Albert, any advice Plaintiff "received" from Proskauer was in his capacity as trustee and has nothing to do with the subject matter of Plaintiff's lawsuit. Nothing in Plaintiff's "diary entry" descriptions of the advice suggests otherwise. (*See* Pollack Aff. at ¶ 8). Accordingly, Plaintiff's application should be denied.

**C.      Any Information Plaintiff Shared With Proskauer As A Trustee Of MTDC Funds Cannot Constitute "Confidences" For The Purposes Of Disqualification**

Although it is clear from the discussion above that none of the matters on which Proskauer could have potentially advised Plaintiff are even remotely related to his current claims against the Fund Defendants, this Court need not reach the question of "substantial relationship" here because none of the information Plaintiff allegedly shared with Proskauer can constitute confidential information within the ambit of D.R. 5-108. *See Allegaert*, 565 F.2d at 250 ("before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client."). Rather, any communications Plaintiff will have had with the firm, by necessity, arose (i) either in the context of Proskauer's representation of the MTDC Funds; or, at a minimum (ii) as part of a joint representation of Plaintiff and the Fund Defendants and, as such, do not involve a client confidence under applicable Second Circuit authority.

The case of *Talvy v. American Red Cross*, 205 A.D.2d 143, 618 N.Y.S.2d 25 (1st Dep't 1994) is illustrative. In *Talvy*, a former personnel manager commenced an employment discrimination lawsuit against his former employer, New York Red Cross. In response to the employer's motion to strike, plaintiff cross-filed a motion to disqualify the employer's counsel,

on the basis that the firm had previously represented him as a client. Plaintiff contended that, as personnel manager, he had worked with the firm to prepare written statements in defense of two earlier lawsuits brought by former employees against the employer and had shared confidential information with the lawyers as part of that representation. The court denied the motion, finding that:

> [n]one of plaintiff's conversations with [defendant's lawyers] involved a client confidence since plaintiff at all times knew that [the firm] represented his employer . . . and had no reason to believe that his communications with [the firm] in the course of his employment with New York Red Cross would not be shared with his employer[.]" Indeed, plaintiff, as its employee, was obligated to disclose to New York Red Cross any information that became known to him in carrying out his duties. . . .Similarly, [the firm] had an obligation to disclose to its client, New York Red Cross, whatever it learned from its client's employees in carrying out its duties as counsel. Absent such obligation, the ability of a lawyer to represent a corporate client would be imperiled.

205 A.D.2d 149-50, 618 N.Y.S.2d at 29. *See also Kinlay v. Henley*, No. 602886/04, 2005 N.Y. Misc. LEXIS 844 (N.Y. Sup. Ct. Mar. 21, 2005) (partner had no expectation of confidentiality in information allegedly disclosed to partnership's lawyers since he had fiduciary duty to disclose information to other partners in any event).

Like the plaintiff in *Talvy*, Plaintiff could not have reasonably believed that Proskauer would withhold from disclosure to the MTDC Funds any information he may have imparted to the firm. As an experienced trustee, with almost a decade of administering employee benefit funds and dealing with MTDC Funds' counsel, Plaintiff is charged with the knowledge that Proskauer's duty was, in the first instance, to the MTDC Funds, with the trustees' interests being jointly represented only to the extent these interests did not conflict with the MTDC Funds' interests. Indeed, as a trustee, Plaintiff himself had a fiduciary obligation under ERISA to

disclose to the MTDC Funds any information that he reasonably believed could be detrimental to the MTDC Funds. *See In re Worldcom*, 263 F. Supp. 2d 745, 765 (S.D.N.Y. 2003) (ERISA fiduciary has obligation to disclose to other fiduciaries information he has, even if acquired in his corporate capacity, if it would impact fiduciary decisions regarding plan as a whole).

Additionally, even assuming that Proskauer did represent Plaintiff individually (which it did not), this would not compel a different conclusion, since the representation would have, by necessity, been joint with the Fund Defendants. In *Allegaert*, the Court of Appeals for the Second Circuit held that, where a former client discloses to his attorney information in the context of a joint representation prior to any dispute between the jointly represented parties arising, there can be no assumption that the attorney would withhold the information from his continuing client. 565 F.2d 246 at 250. *See also Cohen v. ACORN Int'l, Ltd.*, 921 F. Supp. 1062, 1064 (S.D.N.Y. 1995) (denying shareholder's motion to disqualify counsel for corporation on basis that shareholder had no basis to believe that confidences shared by him with counsel to corporation would have been withheld from corporation); *Am. Special Risk Ins., Co. v. Delta Am. Re Ins. Co.*, 634 F. Supp. 112, 121 (S.D.N.Y. 1986) (denying motion to disqualify where confidences were disclosed in connection with joint representation). The *Allegaert* Court noted further that, where the adversity of interests arises after the joint representation commenced and the firm continues to represent the initial client, such that "it is the client, and not the attorney, who has changed position," both the "substantial relationship" test and the "former client doctrine" are inapplicable. *See also Kempner v. Oppenheimer & Co.*, 662 F. Supp. 1271, 1277-78 (S.D.N.Y. 1987) (denying motion to disqualify). *See also Rocchigiani v. World Boxing Counsel*, 82 F. Supp. 2d 182, 188 (S.D.N.Y 2000) (applying *Allegaert* and denying motion to disqualify in joint representation context).

15

Here, as in *Allegaert*, it is Plaintiff, and not Proskauer, who has changed sides. Proskauer has continuously represented the MTDC Funds for the past twelve years. The only reason why the Fund Defendants' interests are adverse to Plaintiff's now is because Plaintiff has elected to commence this action to contest his treatment following a sexual harassment complaint being made against him. Under these circumstances, Plaintiff's purported confidential information cannot form the basis for disqualification.

In sum, there are no grounds for disqualifying Proskauer based on information allegedly disclosed in connection with any of the matters on which Proskauer provided advice.

## CONCLUSION

For the foregoing reason, Plaintiff's application to disqualify Proskauer Rose LLP from representing the Fund Defendants should be denied, as should Plaintiff's unsupported request for "such other and further relief as to the Court may seem just and proper," including his request for attorneys fees' and costs of the application.

Dated: New York, New York
       January 31, 2006

Respectfully submitted,

PROSKAUER ROSE LLP

By:_____ /s/ Deidre A. Grossman_____
       Kathleen M. McKenna (KM-4258)
       Deidre A. Grossman (DG-2677)
       1585 Broadway
       New York, New York 10036
       (212) 969-3000
       kmckenna@proskauer.com
       dagrossman@proskauer.com

*Attorneys for the Fund Defendants*

16