RUTH M. POLLACK, ESQ. (RP1407)
LAW OFFICES OF RUTH M. POLLACK, ESQ.
250 OLD COUNTRY ROAD – SUITE 506
MINEOLA, NEW YORK 11501-4299
**ALL CORRESPONDENCE TO:  P.O. BOX 120
RIVERHEAD, NEW YORK 11901-0120**
516-746-0144
ruthmpollackesq@verizon.net
**Attorneys for Plaintiff Richard Ello**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────x

RICHARD ELLO,

                    Plaintiff,

 -vs-

                                            Case No. 05CV9625 (KMK)
                                            (ECF Case)

ISHRI SINGH, in his individual and official capacities;
RAYMOND POCINO, Vice President and Eastern
Regional Manager of LABORERS INTERNATIONAL
UNION OF NORTH AMERICA, in his individual and
official capacities; LABORERS INTERNATIONAL
UNION OF NORTH AMERICA; LABORERS-
EMPLOYERS COOPERATION AND EDUCATION
TRUST FUND; RAYMOND POCINO, Trustee, in his
individual and official capacities; MASON TENDERS
DISTRICT COUNCIL TRUST FUNDS; JOHN
VIRGA, Funds Director, in his individual and official
capacities; "John Doe and Jane Doe A through D";
the latter being parties unknown to plaintiff,

                    Defendants.
─────────────────────────────────────────x

## ARGUMENT

### I.
### LEGAL STANDARD FOR DISQUALIFIATION

1.

A motion to disqualify counsel is of an equitable nature and should be made with promptness and reasonable diligence once the facts are known. Milone v. English, 306 F.2d 814, 819 (D.C. Ct. App. 1963). In this Circuit, motions to disqualify an attorney are committed to the discretion of the district court. Butala v. Agashiwala, 1997 U.S. Dist. LEXIS 1934 at *30 (S.D.N.Y. February 24, 1997). Although the party seeking disqualification carries the burden and must meet a high standard of proof before a lawyer is disqualified, any doubt is to be resolved in favor of disqualification. Id. at *31; Blue Planet Software, Inc. v. Games Int'l, LLC, 331 F. Supp. 2d 273, 275 (S.D.N.Y. 2004).

## II.
## PROSKAUER ROSE LLP CANNOT PROPERLY REPRESENT DEFENDANTS ISHRI SINGH, LABORERS-EMPLOYERS COOPERATION AND EDUCATION TRUST FUND, MASON TENDERS' DISTRICT COUNCIL TRUST FUNDS OR RAYMOND POCINO

Disqualification under the Disciplinary Rules of the Code of Professional Responsibility (DR-5-101 through 108)[1] is proper where: "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought has access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." Blue Planet Software, 513 F.2d at 276; see also Evans v. Artek Systems Corp., 715 F.2d 788, 791 (2d Cir. 1983).

---

[1] In Plaintiff's initial application, this Rule was inadvertently partially cited as DR 5-105; the intent was to cite to the Rule discussed by the Court and all counsel in Court on January 5, 2006, that is, DR 5-101 through 108, now part of 22 NYCRR 1200.20 –27. Counsel thanks defense counsel for pointing out this error.

2

### A. As a Result of Plaintiff Ello's Relationship with Defendants LECET and MTDC Funds, Defense Counsel Proskauer Rose LLP Had An Implied Attorney-Client Relationship with Ello

The disqualification of an attorney by reason of conflict of interest will not be denied solely because no formal attorney-client relationship existed between the parties. Nichols v. Village Voice, Inc., 99 Misc. 2d 822, 824 (N.Y. Sup. Ct. 1979). Ample case law establishes that an attorney may be disqualified despite an absence of a formal attorney-client relationship. Blue Planet Software, 513 F.2d at 276. Disqualification is appropriate when an attorney gains access to the confidences of someone who is not formally a client where the relationship between the non-client and the actual client facilitates confidential discussions with the attorney and the exchange of confidential information, which the non-client would not otherwise have imparted. Blue Planet Software, 513 F.2d at 276. Plaintiff Ello was a former client of Proskauer until his discharge. The firm has relevant privileged information, which prohibits its representation of defendants in this case.

### B. As a Result of Plaintiff Ello's Relationship with Defendants LIUNA and Virga, Defense Counsel Curtis Mallet-Prevost, Colt & Mosle LLP Had An Implied Attorney-Client Relationship with Ello

The same principles set forth above apply to the extensive relationship between plaintiff and his former counsel Curtis. The very dearth of information supplied to this Court by each firm given its custody of the materials contrasts sharply with the details provided by plaintiff, even though he possesses little information other than his recollection from his many years of experience as a former client of the firms. The failure to produce the materials to this Court, even at this critical juncture in the case

speaks volumes to the merits of plaintiff's application on all three prongs of the test.

**C.    Proskauer Rose Conducted the Internal Investigation of the Allegations Made By Defendant Ishri Singh Against Plaintiff Richard Ello**

Prong two of the test for disqualification requires that there be a substantial relationship between the subject matter of the attorney's prior representation and the issues in the present lawsuit. Evans, 715 F.2d at 791. This, too, is a fact specific prong, and the copious facts set forth by plaintiff in its Declaration more than support this substantial relationship. This is true even now, before any discovery has been commenced and will continue to develop as plaintiff conducts depositions of Proskauer counsel, Curtis counsel, Singh, Virga and Pocino as well as when plaintiff serves even the most basic demands for document production upon the firms to prosecute this case. It is not necessary to cite numerous cases in order to meet the burden. Each case cited by defendants is fact specific and different from the unique facts of the instant case.

**D.    Proskauer Rose, Through Its Representation of Not Only Defendants LECET and MTDC Funds, But Also Pocino, Has Access to Privileged Information Obtained During Previous Litigations; Likewise, Curtis Mallet–Prevost Has Access to Privileged Information Obtained During Previous Litigations**

A motion to disqualify should be granted where the attorney in question is potentially in a position to use privileged information obtained during previous representation. United States v. Ostrer, 597 F.2d 337, 340 (2d Cir. 1979); United States v. Falzone, 766 F. Supp. 1265, 1274 (W.D.N.Y 1991). Allowing an attorney to represent a client in a situation where he may use information obtained in the course of former representation gives the client an unfair advantage. Ostrer, 597 F.2d at 340. In such

4

cases, disqualification is rooted in notions of fundamental fairness. Id. Further, there is a presumption that all members of a law firm share confidential client communications. Falzone, 766 F. Supp. at 1270. Accordingly, even a "Chinese Wall" as proposed by Curtis will not serve to safeguard and protect the precious rights of plaintiff Ello. It is axiomatic that all of the legal fees in the world cannot justify the appearance and existence of impropriety that exist in this case. Ello easily meets all three prongs of the test and has every reason to be deeply concerned about the ethical issues presented.

### III.
### PROSKAUER ROSE LLP CANNOT REPRESENT INDIVIDUAL DEFENDANTS, ISHRY SINGH, RAYMOND POCINO AND JOHN VIRGA, NOR CAN CURTIS PROPERLY REPRESENT LIUNA AND VIRGA WITHOUT VIOLATING BOTH THE DISCIPLINARY RULES AND CASE LAW

Disqualification is proper where the same counsel represents both a union organization and individual defendants within the union organization in a suit by an individual former union member. Milone v. English, 306 F.2d 814, 819 (D.C. Ct. App. 1963). Disqualification is proper because of the inherent conflict of interests of representing both the union and its individual members. Id. at 817.

Again, plaintiff sets forth here and earlier, copious facts that support his right to an order disqualification of Proskauer and Curtis here.

### CONCLUSION

For all of the reasons set forth herein and in the annexed Declaration of Plaintiff with Exhibits, plaintiff respectfully seeks an order disqualifying both defense firms forthwith, together with such other and further relief as to the Court is just and proper.

Dated: February 5, 2006
      Mineola, New York

        Respectfully submitted,

        LAW OFFICES OF RUTH M. POLLACK
        *Attorneys for Plaintiff, Richard Ello*

By: _____
        RUTH M.POLLACK, ESQ. (RP1407)
        250 OLD COUNTRY ROAD, STE. 505
        MINEOLA, NEW YORK 11501
        516.746.0144
        ruthmpollackesq@verizon.net

| | |
|---|---|
| Filename: | elloMEMODISQUAL |
| Directory: | C:\Documents and Settings\rpollack\Desktop |
| Template: | C:\Documents and Settings\rpollack\Application Data\Microsoft\Templates\Normal.dot |
| Title: | RUTH M |
| Subject: | |
| Author: | rpollack |
| Keywords: | |
| Comments: | |
| Creation Date: | 2/5/2006 9:44 PM |
| Change Number: | 3 |
| Last Saved On: | 2/5/2006 11:04 PM |
| Last Saved By: | rpollack |
| Total Editing Time: | 80 Minutes |
| Last Printed On: | 2/5/2006 11:05 PM |

As of Last Complete Printing
    Number of Pages: 6
    Number of Words:    1,305 (approx.)
    Number of Characters:    7,180 (approx.)

# PROSKAUER ROSE

## Representative Clients

Listed below are a number of clients for whom Proskauer is currently performing legal services.

ABC | DEF | GHI | JKL | MNO | PQR | STU | VWX | YZ

### A

- ABC, Inc.
- Accor
- AGY Holding Corporation
- Air India
- Akzo Nobel
- Albert Fisher Group PLC
- Alcatel
- Alinabal Holdings Corporation
- Allegheny Health, Education & Research Foundation
- The Alpine Group, Inc.
- American Federation of Musicians & Employers' Pension Fund
- American Federation of Television and Radio Artists Health & Retirement Funds
- American International Group (AIG)
- American Management Assoc.
- American Recreation Company Holdings, Inc.
- American Spectrum Realty, Inc.
- American Standard Companies, Inc.
- American Zoetrope
- Apollo Real Estate Investment Fund
- Arista Records, Inc.
- Atlantic Realty Trust
- AT&T Corporation
- Avis Rent-A-Car Systems, Inc.
- AXS-One Inc.

### B

- The George Balanchine Trust
- Bancol Y Cia. S. En C.
- Bank of Scotland
- Banque Privee Edmond de Rothschild S.A.
- Barney's, Inc.
- Bear, Stearns & Co. Inc.
- Bed Bath and Beyond Inc.
- Bell Atlantic Master Trust
- The Leonard Bernstein Office, Inc.
- Beth Israel Medical Center
- Big City Radio Inc.
- Biovail Corporation International
- Blackacre Capital
- Bloomingdale's
- Bollore, S.A.
- Bostik, Inc.
- Bristol-Myers Squibb Company
- Buster Brown Apparel, Inc.

### C

- CBS Inc.
- CDI
- Celadon Group, Inc.
- Celgene Corporation
- Cellu Tissue Corporation
- Championship Strategies Limited
- Charterhouse Group International, Inc.
- Charter Municpal Mortgage Acceptance Company
- Ciba Specialty Chemicals, Inc.
- Citigroup Inc.
- The City of New York
- Club Mediterranee
- Columbia University
- Computer Horizons Corp.
- Comtech Telecommunications Corp.
- Consolidated Edison Co.
- Consumer Union of the United States, Inc.
- Costco Wholesale Corporation
- County of Nassau, New York
- Credit Lyonnais Securities (USA) Inc.
- Credit Suisse First Boston Mortgage
- Cross Country Healthcare, Inc.

### D

- Daily News, L.P.
- dELIA*s
- The Depository Trust & Clearing Corporation
- Deutsche Bank
- The Dial Corporation
- Discovery Communications
- DLJ Real Estate Corporate Partners
- Donna Karan International Inc.
- Dow Jones & Company
- The Dress Barn, Inc.

2/3/2006

http://www.proskauer.com/about_the_firm/clients/:pf_printable

# PROSKAUER ROSE

## Representative Clients

Listed below are a number of clients for whom Proskauer is currently performing legal services.

ABC | DEF | GHI | JKL | MNO | PQR | STU | VWX | YZ

### A

- ABC, Inc.
- Accor
- AGY Holding Corporation
- Air India
- Akzo Nobel
- Albert Fisher Group PLC
- Alcatel
- Allnabal Holdings Corporation
- Allegheny Health, Education & Research Foundation
- The Alpine Group, Inc.
- American Federation of Musicians & Employers' Pension Fund
- American Federation of Television and Radio Artists Health & Retirement Funds
- American International Group (AIG)
- American Management Assoc.
- American Recreation Company Holdings, Inc.
- American Spectrum Realty, Inc.
- American Standard Companies, Inc.
- American Zoetrope
- Apollo Real Estate Investment Fund
- Arista Records, Inc.
- Atlantic Realty Trust
- AT&T Corporation
- Avis Rent-A-Car Systems, Inc.
- AXS-One Inc.

### B

- The George Balanchine Trust
- Bancol Y Cia. S. En C.
- Bank of Scotland
- Banque Privee Edmond de Rothschild S.A.
- Barney's, Inc.
- Bear, Stearns & Co. Inc.
- Bed Bath and Beyond Inc.
- Bell Atlantic Master Trust
- The Leonard Bernstein Office, Inc.
- Beth Israel Medical Center
- Big City Radio Inc.
- Biovail Corporation International
- Blackacre Capital
- Bloomingdale's
- Bollore, S.A.
- Bostik, Inc.
- Bristol-Myers Squibb Company
- Buster Brown Apparel, Inc.

### C

- CBS Inc.
- CDI
- Celadon Group, Inc.
- Celgene Corporation
- Cellu Tissue Corporation
- Championship Strategies Limited
- Charterhouse Group International, Inc.
- Charter Municpal Mortgage Acceptance Company
- Ciba Specialty Chemicals, Inc.
- Citigroup Inc.
- The City of New York
- Club Mediterranee
- Columbia University
- Computer Horizons Corp.
- Comtech Telecommunications Corp.
- Consolidated Edison Co.
- Consumer Union of the United States, Inc.
- Costco Wholesale Corporation
- County of Nassau, New York
- Credit Lyonnais Securities (USA) Inc.
- Credit Suisse First Boston Mortgage
- Cross Country Healthcare, Inc.

### D

- Daily News, L.P.
- dELIA*s
- The Depository Trust & Clearing Corporation
- Deutsche Bank
- The Dial Corporation
- Discovery Communications
- DLJ Real Estate Corporate Partners
- Donna Karan International Inc.
- Dow Jones & Company
- The Dress Barn, Inc.

http://www.proskauer.com/about_the_firm/clients/:pf_printable          2/3/2006



# MASON TENDERS' TRAINING FUND

# EMPLOYEE HANDBOOK

# 2004



75 VARICK STREET, SUITE 501, NEW YORK, NEW YORK 10013-1917
Phone: (212) 965-1730    Toll free: (888) 325-MTTF    Fax: (212) 965-1725
e-mail: nycmttf@hotmail.com



A. ~~INTRODUCTION~~

## HARASSMENT: POLICY STATEMENT

All Fund employees have a right to work in an environment free from all forms of discrimination and conduct which can be considered~~,~~ harassing, coercive, or disruptive. Consistent with the Fund's respect for the rights and dignity of each employee, harassment based on race, color, religion, sex, sexual orientation, national origin, age, disability, marital status, citizenship or any ~~they~~**other** characteristic protected by law~~,~~ will not be sanctioned ~~nor~~**or** tolerated. All employees should, therefore, be aware of the following:

(1) Sexual harassment is strictly prohibited. Sexual harassment has been defined by government regulation as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . when submission to such conduct is made, either explicitly or implicitly, a term or condition of an individual's employment; . . . [when] submission to or rejection of such conduct . . . is used as the basis for employment decisions affecting such individual; or . . . such conduct has the purpose or effect of unreasonably interfering with the individual's work performance or creating an intimidating, hostile, or offensive work environment."

(2) Harassment on the basis of any other protected characteristic is also strictly prohibited. Under this policy, harassment is verbal or physical conduct that denigrates or shows hostility or aversion toward an individual because of his/her race, color, religion, sex, sexual orientation, national origin, age, disability, marital status, citizenship or any other characteristic protected by law or that of his/her relatives, friends or associates, and that: (i) has the purpose or effect of creating an intimidating, hostile, or offensive work environment; (ii) has the purpose or effect of unreasonably interfering with an individual's work performance; or (iii) otherwise adversely affects an individual's employment.

Harassing conduct includes, but is not limited to: epithets, slurs, or negative stereotyping; threatening, intimidating or hostile acts; and written or graphic material that denigrates or shows hostility or aversion toward an individual or group and that is placed on walls or elsewhere on the employer's premises or circulated in the workplace.

(3) The ~~Training~~ Fund ~~Director~~**Administrator** and the ~~Assistant~~ Training ~~Fund~~ Director are responsible for assuring that no employee is subjected to conduct that constitutes sexual or any other form of harassment.

2

the Union and for no other purpose. It is improper for any official or representative of the Union, without the express prior written consent of the General President, to permit the use of any mailing list by any third party to promote the sale of any goods or services, or to enable professionals to solicit the membership.

2. No officer or representative of the Union shall have a personal financial interest which conflicts with his/her Union duties.

3. Except for stock purchase plans, profit sharing or retirement plans, no officer or representative of the Union shall have any substantial interest in a business with which LIUNA bargains collectively.

4. No officer or representative shall accept "kickbacks", under-the-table payments, valuable gifts, lavish entertainment or any personal payment of any kind, other than regular pay and benefits for work performed as an employee, from an employer with which the Union bargains collectively or from a business or professional enterprise with which the Union does business.

5. The principles of this Code apply to investments and activities of third parties where they amount to a subterfuge to conceal the financial interests of such officials or representatives.

**Barred Conduct**

No Union officer, representative or employee, and no union trustee of any benefit fund, shall engage in "barred conduct."

"Barred conduct" is defined to include:

a) committing any act of racketeering, as defined in Title 18 of the United States Code, section 1961(1) [set forth in Appendix A to the LIUNA Ethics and Disciplinary Procedure];

b) knowingly associating with any member or associate of the organized crime syndicate known as La Cosa Nostra (LCN);

c) knowingly permitting any member or associate of the LCN to exercise control or influence in the conduct of the affairs of the Union; or

d) obstructing or interfering with the LIUNA Inspector General, the General Executive Board Attorney, or the Independent Hearing Officer, as those parties are described in the LIUNA Ethics and Disciplinary Procedure. The term "knowingly associate" shall mean that:

a) an individual knew that the person with whom he or she was associating was a member or associate of the LCN;
b) the association related directly or indirectly to the affairs of the Union; and
c) the association was more than fleeting or casual.

The definition of "knowingly associate" in this Code also provides for, and incorporates by reference, certain additional exceptions as they appear and are defined in the Consent Decree entered in the case of United States v. District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America, 90 Civ. 5722 [set forth in Appendix B to the LIUNA Ethics and Disciplinary Procedure].

2. The Union shall not permit any of its funds to be invested in a manner which results in the personal profit, or advantage of any officer or representative of the Union.

3. There shall be no contracts for purchase or sale or for rendering services that result in the personal profit or advantage of any officer or representative of the Union. Nor shall any officer, representative or employee of the International Union, District Council, or any Local Union accept personal profit or special advantage from any action of any officer or representative of the Union.

4. Neither the International Union, District Council or any Local Union shall make loans to its officers, representatives, employees or members, or members of their families, for the purpose of financing the private business of such persons.

### Health, Welfare and Retirement Funds

1. No official, representative or employee of the International Union, District Council or a Local Union, nor any union trustee of a benefit fund, shall receive fees or salaries of any kind from a fund established for the provision of health, welfare or retirement benefits, except for reasonable reimbursement provided for in a collective bargaining agreement or trust agreement and expressly approved by the General President or the Board of Trustees, respectively.

2. No official, employee or other person acting as an agent or representative of the International Union, who exercises responsibilities or influence in the administration of health, welfare and retirement programs or the placement of insurance contracts, shall have any compromising personal ties, direct or indirect, with outside agencies such as insurance carriers, brokers or consultants doing business with the health, welfare and retirement plans.

3. Complete records of the financial operations of all health, welfare and retirement funds and programs shall be maintained in accordance with the best accounting practice. Each Union trustee shall require that each such fund be audited regularly.

4. All such audit reports shall be provided to the International Union and shall be available to the members of the Union covered by the fund.

5. The Union trustees or administrators of such funds shall make a full disclosure and report to the members covered by the fund at least once each year.

### Business and Financial Activities of Union Officials

Any person who represents LIUNA and its members, whether elected or appointed, has a sacred trust to serve the best interests of the members and their families. Therefore, every officer and representative must avoid any outside transaction which creates an actual or potential conflict of interest. The special fiduciary nature of Union office requires the highest loyalty to the duties of the office.

1. The mailing lists of the Union are valuable assets. In order to protect the interests of our membership, Union officers and representatives shall not, under any circumstances, without the express prior written consent of the General President, turn over a Union mailing list to an outsider for use in the promotion or sale of any goods or services that benefit an individual or private concern. Mailing lists are to be used only to promote the necessary legitimate functions of



# ETHICAL PRACTICES CODE

The following Ethical Practices shall apply to the International Union, all District Councils, every Local Union, all subordinate bodies, and to every employee, member and officer thereof, and to every union trustee and employee of any benefit fund or political action committee.

**Democratic Practices**

LIUNA's traditions, its Constitution, and federal law all protect the democratic rights of LIUNA's members to participate fully, without fear, abuse, or intimidation in all Union affairs. To that end, the following principles shall be respected.

    1. Each member shall be entitled to a full share in Union self-government. Each member shall have full freedom of speech and the right to participate in the democratic decisions of the Union. Subject to reasonable rules, regulations and qualifications, each member shall have the right to run for office, to nominate through duly established constitutional procedures, and to vote in free, fair and honest elections. In a democratic union, as in a democratic society, every member has certain rights but she/he also must accept certain corresponding obligations. Each member shall have the right freely to criticize the policies and personalities of Union officials; however, this does not include the right to undermine the Union as an institution; to vilify other members of the Union and its elected officers or to carry on activities with complete disregard of the rights of other members and the interests of the Union; to subvert the Union in collective bargaining or to advocate or engage in dual unionism.

    2. Local Union membership meetings, District Council delegate meetings, and International Conventions shall be held regularly, with proper notice of time and place and shall be conducted in an atmosphere of fairness.

    3. All Union rules and laws must be fairly and uniformly applied and disciplinary procedures shall be fair and afford full due process to each member.

    4. The Union shall ensure that its operations shall be conducted in a democratic and fair manner. Corruption, discrimination or anti-democratic procedures shall not be permitted under any circumstances.

**Financial Practices**

Union funds are held in trust for the benefit of the membership. The membership is entitled to assurance that Union funds are not dissipated and are spent for proper purposes. The membership is also entitled to be reasonably informed as to how Union funds are invested or used.

    1. The Union shall conduct its proprietary functions, including all contracts for purchase or sale or for rendering housekeeping services in accordance with the practice of well-run institutions, including the securing of competitive bids for major contracts where appropriate.



# MASON TENDERS' TRAINING FUND

# EMPLOYEE HANDBOOK

# 2004

# DRAFT



75 VARICK STREET, SUITE 501, NEW YORK, NEW YORK 10013-1917
Phone: (212) 965-1730    Toll free: (888) 325-MTTF    Fax: (212) 965-1725
e-mail: nycmttf@hotmail.com



A. ~~INTRODUCTION~~

## HARASSMENT: POLICY STATEMENT

All Fund employees have a right to work in an environment free from all forms of discrimination and conduct which can be considered~~-~~ harassing, coercive, or disruptive. Consistent with the Fund's respect for the rights and dignity of each employee, harassment based on race, color, religion, sex, sexual orientation, national origin, age, disability, marital status, citizenship or any ~~they~~other characteristic protected by law~~,~~ will not be sanctioned ~~nor~~or tolerated. All employees should, therefore, be aware of the following:

(1) Sexual harassment is strictly prohibited. Sexual harassment has been defined by government regulation as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . when submission to such conduct is made, either explicitly or implicitly, a term or condition of an individual's employment;. . . [when] submission to or rejection of such conduct . . . is used as the basis for employment decisions affecting such individual; or . . . such conduct has the purpose or effect of unreasonably interfering with the individual's work performance or creating an intimidating, hostile, or offensive work environment."

(2) Harassment on the basis of any other protected characteristic is also strictly prohibited. Under this policy, harassment is verbal or physical conduct that denigrates or shows hostility or aversion toward an individual because of his/her race, color, religion, sex, sexual orientation, national origin, age, disability, marital status, citizenship or any other characteristic protected by law or that of his/her relatives, friends or associates, and that: (i) has the purpose or effect of creating an intimidating, hostile, or offensive work environment; (ii) has the purpose or effect of unreasonably interfering with an individual's work performance; or (iii) otherwise adversely affects an individual's employment.

Harassing conduct includes, but is not limited to: epithets, slurs, or negative stereotyping; threatening, intimidating or hostile acts; and written or graphic material that denigrates or shows hostility or aversion toward an individual or group and that is placed on walls or elsewhere on the employer's premises or circulated in the workplace.

(3) The ~~Training~~ Fund ~~Director~~Administrator and the ~~Assistant~~ Training ~~Fund~~ Director are responsible for assuring that no employee is subjected to conduct that constitutes sexual or any other form of harassment.

the Union and for no other purpose. It is improper for any official or representative of the Union, without the express prior written consent of the General President, to permit the use of any mailing list by any third party to promote the sale of any goods or services, or to enable professionals to solicit the membership.

2. No officer or representative of the Union shall have a personal financial interest which conflicts with his/her Union duties.

3. Except for stock purchase plans, profit sharing or retirement plans, no officer or representative of the Union shall have any substantial interest in a business with which LIUNA bargains collectively.

4. No officer or representative shall accept "kickbacks", under-the-table payments, valuable gifts, lavish entertainment or any personal payment of any kind, other than regular pay and benefits for work performed as an employee, from an employer with which the Union bargains collectively or from a business or professional enterprise with which the Union does business.

5. The principles of this Code apply to investments and activities of third parties where they amount to a subterfuge to conceal the financial interests of such officials or representatives.

**Barred Conduct**

No Union officer, representative or employee, and no union trustee of any benefit fund, shall engage in "barred conduct."

"Barred conduct" is defined to include:

   a) committing any act of racketeering, as defined in Title 18 of the United States Code, section 1961(1) [set forth in Appendix A to the LIUNA Ethics and Disciplinary Procedure];

   b) knowingly associating with any member or associate of the organized crime syndicate known as La Cosa Nostra (LCN);

   c) knowingly permitting any member or associate of the LCN to exercise control or influence in the conduct of the affairs of the Union; or

   d) obstructing or interfering with the LIUNA Inspector General, the General Executive Board Attorney, or the Independent Hearing Officer, as those parties are described in the LIUNA Ethics and Disciplinary Procedure. The term "knowingly associate" shall mean that:

   a) an individual knew that the person with whom he or she was associating was a member or associate of the LCN;
   b) the association related directly or indirectly to the affairs of the Union; and
   c) the association was more than fleeting or casual.

The definition of "knowingly associate" in this Code also provides for, and incorporates by reference, certain additional exceptions as they appear and are defined in the Consent Decree entered in the case of United States v. District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America, 90 Civ. 5722 [set forth in Appendix B to the LIUNA Ethics and Disciplinary Procedure].

2. The Union shall not permit any of its funds to be invested in a manner which results in the personal profit, or advantage of any officer or representative of the Union.

3. There shall be no contracts for purchase or sale or for rendering services that result in the personal profit or advantage of any officer or representative of the Union. Nor shall any officer, representative or employee of the International Union, District Council, or any Local Union accept personal profit or special advantage from any action of any officer or representative of the Union.

4. Neither the International Union, District Council or any Local Union shall make loans to its officers, representatives, employees or members, or members of their families, for the purpose of financing the private business of such persons.

### Health, Welfare and Retirement Funds

1. No official, representative or employee of the International Union, District Council or a Local Union, nor any union trustee of a benefit fund, shall receive fees or salaries of any kind from a fund established for the provision of health, welfare or retirement benefits, except for reasonable reimbursement provided for in a collective bargaining agreement or trust agreement and expressly approved by the General President or the Board of Trustees, respectively.

2. No official, employee or other person acting as an agent or representative of the International Union, who exercises responsibilities or influence in the administration of health, welfare and retirement programs or the placement of insurance contracts, shall have any compromising personal ties, direct or indirect, with outside agencies such as insurance carriers, brokers or consultants doing business with the health, welfare and retirement plans.

3. Complete records of the financial operations of all health, welfare and retirement funds and programs shall be maintained in accordance with the best accounting practice. Each Union trustee shall require that each such fund be audited regularly.

4. All such audit reports shall be provided to the International Union and shall be available to the members of the Union covered by the fund.

5. The Union trustees or administrators of such funds shall make a full disclosure and report to the members covered by the fund at least once each year.

### Business and Financial Activities of Union Officials

Any person who represents LIUNA and its members, whether elected or appointed, has a sacred trust to serve the best interests of the members and their families. Therefore, every officer and representative must avoid any outside transaction which creates an actual or potential conflict of interest. The special fiduciary nature of Union office requires the highest loyalty to the duties of the office.

1. The mailing lists of the Union are valuable assets. In order to protect the interests of our membership, Union officers and representatives shall not, under any circumstances, without the express prior written consent of the General President, turn over a Union mailing list to an outsider for use in the promotion or sale of any goods or services that benefit an individual or private concern. Mailing lists are to be used only to promote the necessary legitimate functions of



# ETHICAL PRACTICES CODE

The following Ethical Practices shall apply to the International Union, all District Councils, every Local Union, all subordinate bodies, and to every employee, member and officer thereof, and to every union trustee and employee of any benefit fund or political action committee.

## Democratic Practices

LIUNA's traditions, its Constitution, and federal law all protect the democratic rights of LIUNA's members to participate fully, without fear, abuse, or intimidation in all Union affairs. To that end, the following principles shall be respected.

1. Each member shall be entitled to a full share in Union self-government. Each member shall have full freedom of speech and the right to participate in the democratic decisions of the Union. Subject to reasonable rules, regulations and qualifications, each member shall have the right to run for office, to nominate through duly established constitutional procedures, and to vote in free, fair and honest elections. In a democratic union, as in a democratic society, every member has certain rights but she/he also must accept certain corresponding obligations. Each member shall have the right freely to criticize the policies and personalities of Union officials; however, this does not include the right to undermine the Union as an institution; to vilify other members of the Union and its elected officers or to <u>carry on activities with complete disregard of the rights of other members</u> and the interests of the Union; to subvert the Union in collective bargaining or to advocate or engage in dual unionism.

2. Local Union membership meetings, District Council delegate meetings, and International Conventions shall be held regularly, with proper notice of time and place and shall be conducted in an atmosphere of fairness.

3. All Union rules and laws must be fairly and uniformly applied and disciplinary procedures shall be fair and afford full due process to each member.

4. The Union shall ensure that its operations shall be conducted in a democratic and fair manner. Corruption, discrimination or anti-democratic procedures shall not be permitted under any circumstances.

## Financial Practices

Union funds are held in trust for the benefit of the membership. The membership is entitled to assurance that Union funds are not dissipated and are spent for proper purposes. The membership is also entitled to be reasonably informed as to how Union funds are invested or used.

1. The Union shall conduct its proprietary functions, including all contracts for purchase or sale or for rendering housekeeping services in accordance with the practice of well-run institutions, including the securing of competitive bids for major contracts where appropriate.

