UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICHARD ELLO,

                Plaintiff,

  -v-

ISHRI SINGH, in his individual and official capacities; RAYMOND POCINO, Vice President and Eastern Regional Manager of Laborers International Union of North America, in his individual and official capacities; LABORERS INTERNATIONAL UNION OF NORTH AMERICA; LABORERS-EMPLOYERS COOPERATION AND EDUCATIONAL TRUST FUND; RAYMOND POCINO, Trustee, in his individual and official capacities; MASON TENDERS DISTRICT COUNCIL TRUST FUNDS; JOHN VIRGA, Funds Director, in his individual capacities; JOHN and JANE DOES A through D,

                Defendants.

---

Case No. 05-CV-9625 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Ruth M. Pollack, Esq.
Mineola, New York
*Counsel for Plaintiff*

Kathleen M. McKenna, Esq.
Deidre A. Grossman, Esq.
Proskauer Rose LLP
New York, New York
*Counsel for Defendants Ishry Singh, Laborers-Employers Cooperation and Education Trust Fund, Mason Tenders District Council Trust Funds, Raymond Pocino, as a Trustee of the Mason Tenders District Council Trust Funds, and John Virga*

Samuel Rosenthal, Esq.
Curtis, Mallet-Prevost, Colt & Mosle, LLP
New York, New York
*Counsel for Defendants Laborers International Union of North America and Raymond Pocino*

Terrence G. Reed, Esq.
Lankford, Coffield & Reed, PLLC
Alexandria, Virginia
*Counsel for Defendants Laborers International Union of North America and Raymond Pocino*

KENNETH M. KARAS, District Judge:

Before the Court is Plaintiff's Motion to Disqualify counsel for Defendants Ishry Singh, Raymond Pocino, John Virga, Laborers-Employers Cooperation and Education Trust Fund, Mason Tenders District Council Trust Funds, and Laborers International Union of North America.[1]  Also before the Court is Plaintiff's Application for fees related to the filing of the Motion.  For the reasons discussed herein, the Motion and Application are DENIED.

I.  Background

Plaintiff, Richard Ello ("Ello"), was an employee for the Laborers International Union of North American ("LIUNA") and for the Mason Tenders District Council of Greater New York ("MTDC" or "the Union")[2] where, according to Plaintiff's counsel he "was directly involved with law enforcement personnel and with oversight of the funds." (Pollack Aff. ¶ 1)[3]  "At

---

[1] Plaintiff's counsel, for the first time at oral argument on this Motion on July 13, 2006, brought to the Court's attention that she attempted to file a Motion to Amend Plaintiff's First Amended Complaint along with her proposed Second Amended Complaint on the morning of oral argument. As noted on the record on July 13, 2006, Plaintiff's Motion to further Amend his First Amended Complaint was denied without prejudice to refile due to Plaintiff's counsel's failure to comply with the Court's individual practices and the Local Rules of this District. (Doc. No. 38)  Thus, the Motion to Disqualify Counsel considered here, is based solely on the only Complaint, Plaintiff's First Amended Complaint, that was properly before the Court on July 13, 2006.  In the event Plaintiff properly submits a Motion to Amend his First Amended Complaint, the Court will then set a briefing schedule for that motion and any other motions.

[2] LIUNA is a national labor organization overseeing the operations of local unions and district councils.  In that role, LIUNA acts as the parent organization of MTDC. (Mem. In Opp to the Mot. to Disqualify Curtis, Mallet-Prevost, Colt & Mosle, LLP 4 ("Curtis Mem."))

[3] In lieu of submitting a memorandum of law to support the Motion to Disqualify, Plaintiff's counsel submitted an affidavit personally attesting to the relevant facts.

2

times," Plaintiff's counsel alleges, "his duties involved working with the State of New York to establish funds, educational programs for the funds and to oversee other compliance issues. This was due in large part to his fiduciary duties to both the fund employees and participants, which accompanied his positions." (Pollack Aff. ¶ 1)

Ello was employed as the Controller of MTDC between 1988 and 1996. (Pollack Aff. ¶ 3) Subsequently, from 1996 to April 1, 2005, Ello was employed as an "International Representative" for LIUNA. (Pollack Aff. ¶ 3) During this latter period, Ello was also the elected Secretary-Treasurer of LIUNA Local 108, the appointed Deputy Supervisor of Local 108, and the appointed Director of the Greater New York Laborers-Employers Cooperation & Education Trust Fund ("LECET"). (Pollack Aff. ¶ 3) In 1995, Ello was appointed Trustee of Demolition Workers Local 95 where he also served as a Trustee on the Local 95 Pension, Health, and Annuity Funds. (Pollack Aff. ¶ 4) At the same time, Ello was also selected to serve as a Committee Member of the MTDC Political Action Committee. (Pollack Aff. ¶ 4) In approximately 1998, Ello was selected to serve as an Administrative Committee member of the Laborers Eastern Region Organizing Fund. (Pollack Aff. ¶ 5) In December 2004, Ello was selected to serve as a Trustee for the LIUNA Local 30 Trust Funds. (Pollack Aff. ¶ 5) Ello also served "for many years" as a Trustee for the MTDC Pension, Welfare, Training Annuity, Scholarship and Staff Pension Plan Trust Funds. (Pollack Aff. ¶ 5) At the time Ello held these various positions, he was also a participant in the MTDC Pension, Annuity, and Welfare Funds, which entitled him to their benefits and protections.[4] (Pollack Aff. ¶ 5) Plaintiff's counsel

---

[4] The numerous employee benefit funds in which Plaintiff held a position, including (1) the MTDC Funds; (2) the Demolition Workers Union Local 95 Trust Funds; (3) the Recycling and General Industrial Union Local 108 Pension and Welfare Fund; (4) the Laborers' Eastern Region Organizing Fund; and (5) the Plasterers Helpers' Local 30 Trust Funds, are collectively

contends that the nature of Ello's various positions required his extensive cooperation with the FBI, United States Department of Labor, United States Department of Justice, Manhattan District Attorney's Office, the Inspector General of LIUNA, and a court-appointed Monitor and Investigations Officer. (Pollack Aff. ¶ 6)

Plaintiff's counsel argues that the law firms Proskauer Rose LLP ("Proskauer") and Curtis, Mallet-Prevost, Colt, & Mosle, LLP ("Curtis") must be disqualified as defense counsel because both firms have had "numerous contacts and involvements" with Ello in his capacity as a Trustee, Officer, and fund participant. (Pollack Aff. ¶ 2) Therefore, Plaintiff contends, Proskauer and Curtis cannot represent the Defendants who he alleges terminated him under circumstances involving allegations of sexual misconduct because it would violate the confidences of Plaintiff, a "former top advisor and enforcer of ethical and legal rules and laws who they counseled as attorneys at law and with whom they frequently shared both confidential and personal, unofficial information in the past and up to the time of the events which lead to the filing of the instant case." (Pollack Aff. ¶ 7)

Proskauer acknowledges that it was appointed as counsel to the MTDC Funds in April 1995. (Albert Decl. ¶ 2) Plaintiff Ello became a trustee of the MTDC Funds in August 1996. (Albert Decl. ¶ 3) In the ten years Proskauer has represented the MTDC Funds it has advised the Funds in five primary areas: (1) legal compliance in employee fund administration; (2) participant claims; (3) audit and delinquency matters; (4) litigation matters; and (5) employment advice. (Albert Decl. ¶ 4) Since August 1997, Proskauer has represented the Demolition Workers Union Local 95 Trust Funds ("Local 95 Funds") in a similar capacity. (Albert Decl. ¶¶

---

referred to as the "Funds."

5-6) Similarly, since March 1998, Proskauer has served as counsel to the Recycling and General Industrial Union Local 108 Pension and Welfare Funds ("Local 108 Funds"), advising Local 108 Funds on matters in the same five areas. (Albert Decl. ¶ 8)

Curtis's alleged conflict stems from its representation in 1995-96 of MTDC and Mason Tenders Local 59 ("Local 59"). (Curtis Mem. 4) Plaintiff alleges that he had numerous interactions with Curtis in its representation of MTDC. In general, as a MTDC employee and "custodian of records," Plaintiff's interaction with Curtis involved supplying the firm with information it requested about MTDC. (Pollack Aff. ¶ 10) In its capacity as Local 59 Counsel, Curtis moved for a preliminary injunction seeking to prevent LIUNA from revoking Local 59's charter and from seizing its assets pursuant to a reorganization plan. (Curtis Mem. 5) In that complaint, Local 59 sued, among others, Plaintiff Ello in his official capacity as Office Manager and Comptroller for the MTDC of Greater New York. (Curtis Mem. 5) Plaintiff also asserts that in 1996-97, he worked with MTDC and LIUNA to recapture legal fees from Curtis in connection with its Local 59 representation. (Pollack Aff. ¶ 10)

## II. Discussion

### A. Prior Representation Disqualification

Plaintiff appears to allege that Proskauer and Curtis previously served as counsel for Plaintiff, during which time the law firms were exposed to confidential materials such that there exists an inherent conflict of interest necessitating their disqualification.[5]

---

[5] Under Local Rule 7.1 of the Rules of the United States District Courts for the Southern and Eastern Districts of New York, "all motions and all oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon in support of or in opposition to the motion, and divided, under appropriate headings, into as many parts as there are points to be determined. Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default." Local Rule 7.1. Plaintiff's

Because motions to disqualify counsel can often be tactically motivated, cause delay and additional expense, and disrupt attorney-client relationships, the movant must meet a high standard of proof to disqualify the non-movant's counsel. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (noting "high standard of proof" for disqualification motions, in part due to the fact they are "often interposed for tactical reasons, and that even when made in the best of faith, such motions inevitably cause delay" (citation and quotation omitted)); *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978) (requiring "high standard of proof" for disqualification motions because a client loses time, money, and the benefit of its longtime counsel's specialized knowledge of its operations when its attorney is disqualified); *First Hawaiian Bank v. Russell & Volkening*, 861 F. Supp. 233, 237 (S.D.N.Y. 1994) ("Motions to disqualify counsel are viewed with disfavor in this Circuit because they are often interposed for

---

counsel failed to file a memorandum of law in support of Plaintiff's Motion for Disqualification. Instead, Plaintiff's counsel filed an eight-page affidavit merely citing to Fed. R. Civ. P. 1 and DR 5-105.

In response to Defendants' proper Memoranda of Law, Plaintiff's counsel submitted a "Memorandum of Law in Reply and in Support of his Application for Disqualification" along with a lengthy declaration from Plaintiff. Plaintiff's counsel's failure to cite to any legal authority beyond Fed. R. Civ. P. 1 and DR 5-105 in her moving papers put Defendants at a disadvantage by essentially forcing them to respond to a moving target. Moreover, Plaintiff's counsel subsequently admitted that her citation DR 5-105 was in error. (Pl.'s Reply Mem. 2 n.1) Thus, Plaintiff's counsel's failure to observe Local Rule 7.1 "unfairly and unreasonably shift[ed] the burden of articulating [Plaintiff's] arguments to the party opposing the motion or to the court." *Toner v. United Broth. of Carpenters*, No. 96 Civ. 0023, 1999 WL 178784, at *1 (S.D.N.Y. Mar. 31, 1999) (quotations and citations omitted).

Failure to comply with Local Civil Rule 7.1 by failing "to submit a memorandum of law, standing alone, is sufficient cause for granting or denying a motion." *East 65 St. Realty Corp. v. Rinzler*, No. 98 Civ. 6555, 2000 WL 303279, at *2 (S.D.N.Y. Mar. 22, 2002) (citations omitted). Similarly, "[s]ubmitting an affidavit rather than a memorandum of law is insufficient under Local Rule 7.1." *Wenzhou Wanli Food Co. v. Hop Chong Trading Co.*, No. 98 Civ. 5045, 2000 WL 964944, at *3 (S.D.N.Y. July 11, 2000) (citations omitted). Although the Court could properly deny Plaintiff's Motion to Disqualify as a result of Plaintiff's failure to submit a memorandum of law in support of his own motion, the Court declines to do so and addresses the motion on its merits. However, such behavior should not be repeated.

tactical reasons and result in unnecessary delay." (citation and quotation omitted)); *Clark v. Bank of New York*, 801 F. Supp. 1182, 1197 (S.D.N.Y. 1992) ("[A]lthough doubts should be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." (citations omitted)).

To disqualify opposing counsel on conflict of interest grounds in order to protect the confidences of a former client, a movant must establish three elements: (1) the party is a former client of the attorney; (2) the attorney had access to, or was likely to have had access to, relevant privileged information in the course of the alleged prior representations; and (3) there is a substantial relationship between the subject matter of the (alleged) prior representation and the issues in the current action.[6]  *See Evans*, 715 F.2d at 791. In cases where the earlier representation constituted a joint effort between the parties a fourth requirement, potentially precluding the use of the third factor, is added: "before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client." *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977); *see also Cohen v. Acorn Int'l Ltd.*, 921 F. Supp. 1062, 1064 (S.D.N.Y. 1995); *First Hawaiian Bank*, 861 F. Supp. at 238 n.7 (citing *Allegaert*, 565 F.2d at 250-51). These factors are examined below.

       1.  Attorney-Client Relationship

The first and threshold question is whether Plaintiff had an attorney-client relationship with either Curtis or Proskauer. "There is no single, well-defined test used to determine whether

---

[6] Courts, including the Court in *Evans*, often switch the order of the second and third factors. *See, e.g.*, *Evans*, 715 F.2d at 791; *Clark*, 801 F. Supp. at 1197.

an attorney-client relationship exists; rather, a court must weigh a number of factors, including among others: (1) whether a fee arrangement was entered into or a fee paid; (2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; and (3) whether the purported client believes that the attorney was representing him and whether this belief is reasonable." *Parkins v. St. John*, No. 01 Civ. 11660, 2004 WL 1620897, at *4 (S.D.N.Y. July 19, 2004) (citing *First Hawaiian Bank*, 861 F. Supp. at 238). Applying these factors, the Court concludes that Plaintiff has failed to carry his heavy burden of demonstrating that either Proskauer or Curtis had an attorney-client relationship with Plaintiff.

Plaintiff does not maintain, nor could he maintain, that he entered into a formal arrangement with either law firm to provide representation.[7] To blunt this damaging fact, Plaintiff's counsel suggests that an implied attorney-client relationship existed between the law firms and Plaintiff because the relationship between the law firms and Plaintiff resulted in the exchange of confidential information that otherwise would not have occurred. (Pl.'s Reply Mem. 3-4) Plaintiff is correct in noting that disqualification may be appropriate even when a formal

---

[7] Plaintiff acknowledges in his Declaration that Proskauer only formally represented LECET and that the LECET Trustees had their own, separate, legal counsel. (Ello Decl. ¶¶ 17, 21) However, Plaintiff maintains that this separate representation ended a "few years back" and that Proskauer "agreed to act in both the Trustees' and the Funds' capacity as legal counsel." (Ello Decl. ¶ 17) This is the only allegation that Proskauer formally represented Ello. Yet, Proskauer maintains that it only commenced its representation of LECET in March 2005, after Plaintiff resigned as LECET Director. (Albert Decl. ¶ 13) Plaintiff contests this point by arguing that he was merely asked to stay away from LECET and therefore did not actually resign, and therefore he was on LECET payroll until April, not March, 2005. (Ello Decl. ¶ 17) Even if Plaintiff was on LECET payroll until April 1, 2005, (Am. Compl. ¶ 86) a month after Proskauer commenced its representation of LECET, Plaintiff never alleges that he had any attorney-client communications with Proskauer during the, at most, one month where his nominal employment potentially overlapped with Proskauer's representation of LECET such that he reasonably believed he was individually represented by Proskauer. Moreover, Plaintiff has alleged no fact to counter Proskauer's representation that all its dealings with LECET have been through its current Director and Administrator, Chris J. Columbia, and not Plaintiff. (Albert Decl. ¶ 13)

attorney-client relationship does not exist. However, an alleged implied attorney-client relationship founded upon the exchange of confidential information is still limited by the requirement that the person revealing the confidential information must have had a reasonable basis, under the circumstances, to believe that the attorney would respect such confidences. *See Blue Planet Software, Inc. v. Games Int'l LLC*, 331 F. Supp. 2d 273, 276 (S.D.N.Y. 2004) (citations omitted).

It is well-accepted that "[u]nless the parties have expressly agreed otherwise in the circumstances of a particular matter, a lawyer for a corporation represents the corporation, not its employees." *Talvy v. Amer. Red Cross in Greater New York*, 618 N.Y.S.2d 25, 29 (App. Div. 1994) (citing *Evans*, 715 F.2d at 792), *aff'd*, 661 N.E.2d 159 (N.Y. 1995). Such a standard also applies to the relationship between a trustee and a fund or a union. *See Toussaint v. James*, No. 01 Civ. 10048, 2003 WL 21738974, at *8 (S.D.N.Y. July 25, 2003) (citations omitted) ("Counsel for pension plans do not, *ipso facto*, become counsel for trustees, as a pension plan is considered a distinct legal entity and may sue or be sued in its own capacity."); *see also Mason Tenders Dist. Council Pension Fund v. Messera*, 4 F. Supp. 2d 293, 299-303 (S.D.N.Y. 1998) (noting distinction between counsel for a union fund and representation of a fund trustee and finding fund's reliance on its own subjective belief of co-representation of a fund trustee and the fund itself "is not sufficient to establish an attorney-client relationship" (citations and quotations omitted)).[8]

---

[8] To the extent Plaintiff is also suggesting that Proskauer's representation of the MTDC Funds formed an attorney-client relationship with him due to his status as an individual fund participant, this argument is also without support. *See, e.g.*, *Senese v. Chicago Area I.B. of T. Pension Fund*, No. 97 C 0382, 1999 WL 90633, at *3 (N.D. Ill. Feb. 9, 1999) (finding no attorney-client relationship between individual who served as Principal Officer of the Union, Union Trustee, Plan Manager, and Plan Participant and counsel retained by the Fund). Cases

Here, none of Plaintiff's conversations with Proskauer or Curtis involved a client confidence since at all times Plaintiff knew or should have known that Proskauer and/or Curtis represented the Funds or the Union.  Plaintiff therefore had no reason to believe that his communications with Proskauer and/or Curtis, would not be shared and used by the Funds or the Union.  For example, Plaintiff does not deny that in connection with prior litigation commenced by the Local 95 Funds, an action where Plaintiff maintains confidential information was obtained by Proskauer, Plaintiff, as a non-party witness, was defended by a non-Proskauer attorney. (Albert Decl. ¶ 7; Ello Decl. ¶ 11)  Under the circumstances, where Plaintiff was defended by a non-Proskauer attorney in a matter where Proskauer represented Local 95, Plaintiff could not have reasonably believed that Proskauer represented him individually.  Thus, despite Plaintiff's lengthy list of interactions with Proskauer, including his attendance at holiday parties with Proskauer attorneys, it was unreasonable for Plaintiff to believe that Proskauer represented him.

It was similarly unreasonable for Plaintiff to believe Curtis represented him when, for example, in its representation of Local 59, Curtis actually named Plaintiff as a defendant in the complaint. (Curtis Mem. 8)  In light of Plaintiff's heavy burden of demonstrating that under the circumstances it was reasonable for him to believe that Proskauer or Curtis served as his attorney, Plaintiff's subjective belief that he was personally represented by Proskauer and/or Curtis and that the Funds or Union would not have access to and use of the information he provided to their counsel is patently unreasonable and militates in favor of denial of the motion.

---

addressing whether communications between fund attorneys are protected from disclosure from the fund's beneficiaries or participants also do not support Plaintiff's attempt to create a presumed attorney-client relationship between a fund and its Trustees or beneficiaries as a result of an attorney's representation of the Fund. *See Mason Tenders*, 4 F. Supp. 2d at 302-03 (citing *Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F. Supp. 869, 893-94 (S.D.N.Y. 1997)).

*See Culver v. Merrill Lynch & Co.*, No. 94 Civ. 8124, No. 95 Civ. 3585, No. 95 Civ. 3586, No. 95 Civ. 8762, 1997 WL 223088, at *4 (S.D.N.Y. May 5, 1997) (noting that plaintiffs' understanding that the defendant company's attorney also served in a dual capacity as plaintiffs' attorney militates in favor of denial of a disqualification motion "as it precludes plaintiff from having harbored a reasonable expectation" that information provided by plaintiff would not be shared with the attorney's "other" client, the corporate defendant).

      2.  Confidential Information

Having determined that Plaintiff has failed to show a previous attorney-client relationship between Plaintiff and either Proskauer or Curtis, the Court need not proceed further in its disqualification analysis. *See Parkins*, 2004 WL 1620897, at *5; *Culver*, 1997 WL 223088, at *4. Nevertheless, even assuming that Plaintiff had established that he was individually a former client of Proskauer or Curtis, disqualification would still be unwarranted. As mentioned above, the second part of the disqualification analysis requires that the movant, here Plaintiff, put forth evidence that the attorneys had access to, or were likely to have access to, relevant privileged information in the course of the alleged prior representations. *See Parkins*, 2004 WL 1620897, at *5. This confidentiality inquiry operates "at the threshold" of prong three, the substantial relationship element. *Id.* Thus, "'[b]efore the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he *could* have received information which his former client might reasonably have assumed the attorney would withhold from his present client.'" *Cohen*, 921 F. Supp. at 1064 (quoting *Allegaert*, 565 F.2d at 250).

    Plaintiff contends that Proskauer and Curtis were privy to confidential information about Plaintiff in the course of their alleged prior representation of him that would be relevant in this

11

case. Even assuming that Proskauer and Curtis formerly represented Plaintiff, it is indisputable that Proskauer and Curtis also represented his Defendant employers at the same time; that Proskauer and Curtis established their relationships with Defendants before establishing any relationship with Plaintiff; and that Proskauer's and Curtis's representation of Defendants was open, continuous, and often adverse to Plaintiff's interests. Indeed, Plaintiff knew from his own interaction with the law firms on behalf of the Funds and the Union, that Proskauer and Curtis worked for the Funds and the Union in various capacities, some that were clearly adverse to his individual interests. For example, Plaintiff, as a Fund and Union employee, was obligated to disclose to his employers, "any information that became known to him in carrying out his duties," and similarly Proskauer and Curtis, "had an obligation to disclose to [their] client[s], [the Funds and the Union], whatever [they] learned from [their] client's employees in carrying out [their] duties as counsel." *Talvy*, 618 N.Y.S.2d at 29.

"Other courts, faced with similar disqualification motions, based on a former employee's claim that his communications with the employer's counsel, while he was employed, were confidential, thus preventing the employer's counsel from representing it in a matter adverse to the former employee, have routinely rejected such claims." *Id.* (collecting cases where courts held that former employee could not reasonably believe that his communications with the employer's attorney would be kept from the employer); *see also Allegaert*, 565 F.2d at 250-51 (holding that even in instances of prior joint representation, it is unreasonable for a client to believe that the law firm would not share confidential information received from one client with the primary client); *Cohen*, 921 F. Supp. at 1064 (same). Under such circumstances, Plaintiff's disqualification motion must be denied. *See Parkins*, 2004 WL 1620897, at *5 (holding that

even in a case of prior joint representation, disqualification is unwarranted where counsel established his relationship with the non-moving party before establishing his relationship with the movant and his representation of the non-movant was open, continuous, and adverse to the movant's interests). Because Plaintiff has failed to meet his heavy burden in establishing that the Proskauer and Curtis attorneys were in a position where they could have received confidential information from Plaintiff, the Court does not need to reach the question of whether the "substantial relationship" test has been met. *See Cohen*, 921 F. Supp. at 1064.

### B. Advocate-Witness Disqualification

Plaintiff also attempts to disqualify Proskauer by arguing that Proskauer attorneys "could be called as witnesses in this case."[9] (Pollack Aff. ¶ 9)

"'Disqualification motions premised on the advocate-witness rule are subject to strict-scrutiny because of the "strong potential for abuse" when a lawyer invokes the need to call opposing counsel as a witness and then acts to disqualify him as counsel.'" *Parkins*, 2004 WL 1620897, at *6 (quoting *Stratavest Ltd. v. Rogers*, 903 F. Supp. 663, 667 (S.D.N.Y. 1995)); *see also Sec. Ins. Co. of Hartford v. Mendon Leasing Corp.*, No. 01 Civ. 9054, 2002 WL 31387484, at *2 (S.D.N.Y. Oct. 22, 2002). A party seeking disqualification bears the burden of demonstrating that "it is likely that the testimony to be given by the witness [attorney] is necessary and that it is substantially likely to be prejudicial to the party represented by [the attorney]." *April Broad., Inc. v. Smith*, No. 95 Civ. 7664, 1996 WL 137487, at *5 (S.D.N.Y. Mar. 27, 1996) (citing *Parke-Hayden, Inc. v. Loews Theatre Mgmt. Corp.*, 794 F. Supp. 525, 527 (S.D.N.Y. 1992)); *see also Parkins*, 2004 WL 1620897, at *6 (citation omitted) ("The moving

---

[9] There is no claim of advocate-witness disqualification as to Curtis attorneys.

party bears the burden of demonstrating how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial.").

A lawyer's testimony is "necessary," "*only* if there are no other witnesses to the circumstances at issue." *Cabble v. Rollieson*, No. 04 Civ. 9413, 2006 WL 464078, at *5 (S.D.N.Y. Feb. 27, 2006) (citation and quotation omitted); *see also United States v. Tate & Lyle N. Am. Sugars, Inc.*, 184 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002) (finding no necessity for attorney's testimony because the communications to which he would testify could be shown by other testimony or non-testimonial evidence). For testimony to be "prejudicial," it must be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the client might have an interest in the lawyer's independence in discrediting that testimony. The movant bears the burden of demonstrating how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial." *Paramount Commc'ns, Inc. v. Donaghy*, 858 F. Supp. 391, 395 (S.D.N.Y. 1994) (citing *Parke-Hayden, Inc.*, 794 F. Supp. at 527).

Plaintiff has utterly failed to demonstrate with sufficient specificity what non-cumulative testimony from a Proskauer attorney is necessary and as to what issues such testimony will likely be prejudicial. The only guidance Plaintiff has given to the Court in carrying his burden on this issue is to note that Proskauer attorneys *could* be called as witnesses, but does not specify how their testimony would be necessary, let alone prejudicial to the Defendants. Such a showing by Plaintiff is clearly inadequate to carry his burden. *See Talvy*, 618 N.Y.S.2d at 31 ("Merely because an attorney 'has relevant knowledge or was involved in the transaction at issue' does not make that attorney's testimony necessary. Such a determination must take into account 'such

factors as the significance of the matters, weight of the testimony, and availability of other evidence.'" (quoting *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 508 N.E.2d 647, 651-51 (N.Y. 1987))).  Furthermore, even if the Court determined that a specific Proskauer lawyer or lawyers "could" be called as witnesses, the disqualification of the entire firm would still not be warranted.  *See Culver*, 1997 WL 223088, at *3; *April Broad., Inc.*, 1996 WL 137487, at *5; *Davin v. JMAM, LLC*, 812 N.Y.S.2d 494, 494 (App Div. 2006) ("[E]ven if testimony from some of plaintiff's attorneys were necessary, disqualification of the entire law firm would not therefore be warranted." (citation omitted));  *Talvy*, 618 N.Y.S.2d at 31.

While it is possible that a Proskauer attorney's testimony may ultimately be necessary, it is too early in the life of this case, based on Plaintiff's showing, to reach that conclusion.[10] Accordingly, Plaintiff's Motion to Disqualify Proskauer on grounds that its attorneys would serve as witness-advocates is denied.

---

[10] In opposing Plaintiff's disqualification motion, the Court assumes that Proskauer has conducted an internal review and has determined, based on what it knows to date of Plaintiff's allegations, that none of its attorneys is likely to be a necessary witness in this case.  If circumstances change, and it becomes apparent that, in fact, a Proskauer attorney's testimony is necessary and likely to be prejudicial to its clients, the Court trusts that Proskauer will promptly advise the Court.

### III. Conclusion

For the reasons stated above, Plaintiff's Motion to Disqualify Defendants' counsel is DENIED without prejudice.[11] Plaintiff's Application for fees associated with the filing of his Motion to Disqualify is also DENIED.

The Clerk of the Court is respectfully requested to terminate this Motion. (Doc. No. 20)

SO ORDERED.

Dated:   July 31, 2006
         New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[11] The Motion is denied without prejudice as Plaintiff, in his proposed Second Amended Complaint appears to want to add Proskauer as a defendant in this case. Obviously, should that happen, or if facts not available to Plaintiff when he filed this Motion are discovered, Plaintiff may seek leave to file a new motion to disqualify counsel.

Service List:

Ruth M. Pollack, Esq.
1228 West Main St., P.O. Box 120
Riverhead, New York 11901
*Counsel for Plaintiff*

Kathleen M. McKenna, Esq.
Deidre A. Grossman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York 10036
*Counsel for Defendants Ishry Singh, Laborers-Employers Cooperation and Education Trust Fund, Mason Tenders District Council Trust Funds, Raymond Pocino, as a Trustee of the Mason Tenders District Council Trust Funds, and John Virga*

Samuel Rosenthal, Esq.
Curtis, Mallet-Prevost, Colt & Mosle, LLP
101 Park Ave.
New York, New York 10178
*Counsel for Defendants Laborers International Union of North America and Raymond Pocino*

Terrence G. Reed, Esq.
Lankford, Coffield & Reed, PLLC
120 North St. Asaph St.
Alexandria, Virginia 22314
*Counsel for Defendants Laborers International Union of North America and Raymond Pocino*